# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

TYRUS TYRONE BROWN,

    Petitioner,

    v.

STATE OF MARYLAND

    Respondent.

Civil Action No.:  ELH-19-2176

## MEMORANDUM OPINION

Petitioner Tyrus Tyrone Brown, a Maryland prisoner, has filed a Petition For Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254.  ECF 1 (the "Petition").  Respondent is the Maryland Attorney General, who filed an answer to the Petition, asserting that the claims are without merit. ECF 9.  The submission includes several exhibits.  Petitioner filed a reply.  ECF 10.

No hearing is required.  *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2021); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)).  For the reasons that follow, I shall deny the Petition.  And, a certificate of appealability shall not issue.

## I.  Background

Brown was charged in the Circuit Court for Anne Arundel County in a thirteen-count indictment related to a murder, which occurred on April 21, 2013.  ECF 9-1 at 4.  On April 28, 2016, pursuant to a plea deal, Brown entered a guilty plea to the charge of second degree murder (Count 1) and use of a firearm in the commission of a crime of violence (Count 3).  ECF 9-2 (Tr. of 4/28/16).

The State summarized the factual basis of the plea.  On April 21, 2013, officers from the Annapolis Police Department responded to a reported shooting in the 200 block of Victor Parkway in Anne Arundel County, Maryland.  ECF 9-2 at 17-18. Officers located the victim, John Donnell Ray, who was deceased from a single gunshot wound to the chest.  *Id.* at 18.  Donnell was seated in the driver's seat of a gold Lexus.  A witness told officers that he heard a gunshot and saw three black males running from the area of the gold vehicle.  *Id*. at 18-19.  The witness also saw one of the males drop a handgun on the pavement and stop and pick it up.  *Id.* at 19.  The witness's descriptions of the three males he saw matched the description of Tyrus Brown, Tahzay Brown, and Todd Brown.  *Id.* at 18-19.

Police learned that the victim used drugs and had been drinking the night before the homicide and on the morning of the homicide.  *Id.* at 19.  Using a friend's phone, the victim arranged to purchase drugs from Tahzay Brown in the Victor Parkway area.  *Id.* at 20.  Video footage shows that Tahzay Brown, Todd Brown, and Tyrus Brown met in the neighborhood.[1]  *Id.* However, the video did not capture the shooting.

The evidence showed that the three men met with the victim, who took the narcotics from Tahzay Brown.  When the victim sat down in the vehicle, Tyrus Brown shot him in the chest.  *Id*. at 21.  Tahzay Brown, Todd Brown, and Tyrus Brown cleaned up the scene and fled.  *Id.* at 22.

The police conducted controlled calls to Tyrus Brown.  *Id*. at 23.  He stated on a call that he planned to admit that he committed the murder.  *Id.*  If the case proceeded to trial, the State intended to elicit testimony from the participants that Tyrus Brown was the person who killed John Donnell Ray.  *Id.* at 23-24.

---

[1] Todd and Tyrus Brown are brothers.

Brown was sentenced on June 6, 2016, to an aggregate term of thirty years of imprisonment. ECF 9-3 (Tr. of 6/6/16). In particular, for second degree murder, Brown received a sentence of 30 years, with all but 25 years suspended. For use of a firearm during the commission of a crime of violence, Brown received a sentence of 20 years, with all but 5 years suspended. The sentences were imposed consecutively. ECF 9-1 at 12-13; 9-3. Per the plea deal, all other charges were dismissed. *Id*.

Brown filed an application for post conviction relief with the circuit court on November 11, 2016. ECF 9-1 at 17-32. The circuit court initially denied Brown's application because he failed to comply with Maryland Rule 4-402. ECF 9-1 at 33-44. However, Brown timely refiled a compliant application on January 5, 2017. ECF 9-1 at 35-41. On Brown's behalf, counsel submitted a supplemental application on March 27, 2018. ECF 9-1 at 43-54. Brown's post conviction claims included: (1) the guilty plea to the firearm charge was not knowing and voluntary because he was not advised of the elements of the crime, (2) the guilty plea was not knowing and voluntary because he did not understand the sentence imposed, (3) trial counsel rendered ineffective assistance because she failed to disclose the co-defendants' recorded jail calls, and (4) trial counsel rendered ineffective assistance because she failed to file a motion for modification of sentence. ECF 9-1 at 35-41; ECF 9-1 at 43-54.

The circuit court held a hearing on Brown's post conviction application on July 17, 2018. ECF 9-4 (Tr. of 7/17/18).[2] Brown and his trial counsel, Catherine Woolley, testified at the hearing. The circuit court issued a Memorandum Opinion and Order dated January 15, 2019. ECF 9-1 at

---

[2] At the outset of the hearing, Brown voluntarily withdrew his *pro se* claim of prosecutorial misconduct and his claim that trial counsel was ineffective for failing to take the case to trial. ECF 9-4 at 3-5.

55-71.[3]  The circuit court granted partial relief by permitting Brown to file a belated motion for modification of sentence.  All other claims were denied on the merits.  *Id.*

Thereafter, on February 6, 2019, Brown filed an application for leave to appeal with the Maryland Court of Special Appeals.  ECF 9-1 at 72-84.  It was denied on June 14, 2019.  *Id.* at 86-88.

The habeas petition followed.  ECF 1.  Brown asserts two claims in his timely federal habeas petition: (1) the guilty plea to the firearm charge was not knowing and voluntary because he was not advised of the elements of the crime, and (2) trial counsel rendered ineffective assistance because she failed to disclose the co-defendants' recorded jail calls.  ECF 1 at 7.

## II.      Standard of Review

A petition for a writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a); *see Wilson v. Corcoran*, 562 U.S. 1 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  In *Larry v. Branker*, 552 F.3d 356, 368 (4th Cir. 2009), the Court said: "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."

"The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply *de novo* review of factual findings and to substitute its own opinions for the determinations made on the scene by the trial judge."  *Davis v. Ayala*, 576 U.S. 257, 276 (2015) (internal quotation marks and citations omitted).  In *Nicolas v. Atty. Gen. of Maryland*, 820 F.3d 124, 129 (4th Cir. 2016), the Fourth Circuit explained (citing 28 U.S.C. § 2294(d)):

---

[3] The Memorandum Opinion was docketed on January 16, 2019.  *See* ECF 9-1 at 71.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires a federal court reviewing a habeas petition that has already been adjudicated on the merits in state court to give considerable deference to the state court decision. A federal court may not grant habeas relief unless the state court arrived at "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

This Court "must presume that the state court's factual findings are correct unless the petitioner rebuts those facts by clear and convincing evidence," and this court "cannot disturb the state court's ruling simply because it is incorrect; it must also be unreasonable." *Nicolas*, 820 F.3d at 129; *see also Harrington v. Richter*, 562 U.S. 86, 100-01 (2011); 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell,* 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where the state court has "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.*

For a state court's decision to be contrary to established federal law, the state court must have arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or must have confronted facts that are "materially indistinguishable from a relevant Supreme Court" case but nevertheless arrived at the opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see Barnes v. Joyner*, 751 F.3d 229, 238 (4th Cir. 2014); *Lovitt v. True*, 403 F.3d 171, 178 (4th Cir. 2005). Notably, "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly.'" *Lovitt*, 403 F.3d at 178 (quoting *Williams*, 529 U.S. at 411). Rather, the state court's application of federal law "'must also be unreasonable.'" *Lovitt*,

5

403 F.3d at 178 (citation omitted); *see Barnes*, 751 F.3d at 238-39 (state court's decision is an unreasonable application of clearly established federal law when the state court identifies the correct governing principle but unreasonably applies that principle to the facts).

Under section 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* This standard was "meant to be" one that is "difficult to meet…" *Richter*, 562 U.S. at 102.

### III.   Discussion

### A.   Involuntary Guilty Plea

The standard to determine whether a guilty plea is constitutionally valid is whether the guilty plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *North Carolina v. Alford,* 400 U.S. 24, 31 (1970). In applying this standard, courts look to the totality of the circumstances surrounding the guilty plea, granting the defendant's solemn declaration of guilt a presumption of truthfulness. *Brady v. United States,* 397 U.S. 742, 749 (1970); *Henderson v. Morgan,* 426 U.S. 637, 648 (1976) (plurality opinion). The Constitution requires the circumstances to reflect that the defendant was informed of all the direct consequences of his plea. *Brady,* 397 U.S. at 755. A plea may be involuntary if the defendant does not understand the nature of the constitutional rights he is waiving, or unintelligent if the defendant does not understand the charges against him. *Henderson,* 426 U.S. at 645 n.13.

Brown contends that his plea is invalid because no one explained to him the elements of Count 3, Use of a Firearm in the Commission of a Crime of Violence. Brown presented a federal

claim in his supplemental petition for post conviction relief, which cited the Supreme Court cases of *Bradshaw v. Stumpf*, 545 U.S. 175 (2005), and *Henderson v. Morgan*, 426 U.S. 637 (1976). However, the circuit court's opinion focused on Maryland law, particularly *State v. Daughtry*, 419 Md. 35, 18 A.3d 60 (2011).

The circuit court noted that *Daughtry* directs Maryland courts to "consider totality of the circumstances, including 'the complexity of the charge, the personal characteristics of the accused, and the factual basis proffered to support the court's acceptance of the plea.'" ECF 9-1 at 61.  In denying Brown's claim, the circuit court explained, *id.* at 66:

> This Court concludes that Petitioner did have a sufficient understanding of the charge and therefore, rendered a knowingly [sic] and voluntary plea.  Upon review of the plea transcript as well as trial counsel's testimony and applying the *Daughtry* factors, this Court finds that trial counsel did explain the elements of "use of a firearm during a crime of violence" prior to the plea.  This Court is convinced that Petitioner was advised of the elements of the charge as trial counsel's testimony is determined credible.  Additionally, this Court finds this charge is readily ascertainable as the terms themselves explain the nature of the offense.  Moreover, given that Petitioner pled guilty to second degree murder the "use of firearm during the crime of violence" is self-explanatory as any lay person of reasonable intelligence would understand that the charge of second degree murder is a crime of violence.

This Court cannot analyze Brown's claim based on the standard set forth in *Daughtry*, because habeas relief is available only for violations of federal law.  *See Fletcher v. Wolfe*, No. CV TDC-15-0051, 2018 WL 1211535, at *5 (D. Md. Mar. 8, 2018) (citing *Estelle v. McGuire,* 502 U.S. 62, 68 (1991)).  But, Brown argued in his supplemental application for post conviction relief that his guilty plea to Count 3 was involuntary under *Bradshaw v. Stumpf*, 545 U.S. 175 (2005), because the elements of the offense were never explained to him.

In *Bradshaw*, the Supreme Court said, 545 U.S. at 182-83 (internal citations omitted):

> A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences."  Where a defendant pleads guilty to a

crime without having been informed of the crime's elements, this standard is not met and the plea is invalid…While the court taking a defendant's plea is responsible for ensuring "a record adequate for any review that may be later sought," we have never held that the judge must himself explain the elements of each charge to the defendant on the record.  Rather, the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel.  Where a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty.

Brown testified during the plea hearing that he understood he was entering a plea to second degree murder (Count 1) and use of a firearm during the commission of a crime of violence (Count 3).  ECF 9-2 (Tr. of 4/28/16), at 5-6.[4]  Brown also confirmed, *inter alia*, that he understood he was relieving the state of its burden of proof, he was waiving his right to a trial by jury, and he was waiving his right to testify in his own defense.  *Id*. at 7-8.  Brown's trial counsel explained the elements of second degree murder on the record during the plea hearing, but neglected to explain the elements of use of a firearm during the commission of a crime of violence.  *Id.* at 11-12.  Trial counsel also did not state on the record that she had previously explained to Brown the elements of use of a firearm during the commission of a crime of violence, *i.e.*, that she discussed them with the defendant prior to the plea hearing.  ECF 9-2.

At the post conviction hearing, Brown's trial counsel, Catherine Woolley, testified that she met with the defendant four or five times before the guilty plea proceeding.  ECF 9-4 at 43.  She had been in practice for about 15 years, and this case was not her first murder case.  *Id.* at 42.  Further, Woolley testified that she "absolutely" discussed with Brown the charges he was facing, and she specifically reviewed the elements of the charges.  *Id.* at 43-44; *see also id*. at 51.

---

[4] The defendant was not placed under oath at the hearing.

Woolley was one of two lawyers assigned to represent the defendant in the case. *Id.* at 41, 42. She believed her co-counsel also met with the defendant. *Id.* at 43. But, to my knowledge, co-counsel did not appear for the guilty plea, sentencing, or post-conviction hearing.

During Brown's post conviction testimony, Brown denied that Woolley ever advised him of the elements of Count 3. ECF 9-4 at 12. As noted above, the circuit court determined that Wooley's testimony was credible, and that Brown had been apprised of the elements of Count 3 before the guilty plea.

In the absence of a statement on the record, courts have applied a presumption that defense attorneys usually explain the nature of a charge to their clients. *See Henderson v. Morgan*, 426 U.S. 637 (1976). ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice what he is being asked to admit."). In *Harrison v. Warden*, 890 F.2d 676 (4th Cir. 1989), the Fourth Circuit found a plea was voluntary by employing the *Henderson* presumption in conjunction with trial counsel's post conviction testimony that he discussed the nature of the offense with the defendant.[5]

Brown's trial counsel testified at the post conviction hearing that she explained the elements of Count 3 to Brown before the plea hearing. Despite contrary testimony from Brown, the circuit court made a factual determination that trial counsel's testimony was credible and Brown was advised of the elements of Count 3 before the plea hearing. The State court's factual determinations are presumed to be correct. Brown has not rebutted the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

---

[5] Any interpretation of *Bradshaw* by the Maryland courts which is at odds with the *Henderson* presumption is contrary to federal law. *See Castellon- Gutierrez v. United States*, 754 F. Supp. 2d 774, 779-80 (D. Md. 2010).

Considering the federal precedent described above, which allows for a presumption that trial counsel discussed the elements of Count 3 with Brown, along with the State court's factual determination that Brown had been advised of the elements of Count 3, it was not an unreasonable application of federal law for the State court to conclude that Brown had been adequately informed of the nature of the charges against him.  The Court will deny the Petition as to this issue.[6]

## B.  Ineffective Assistance of Counsel

The Sixth Amendment to the Constitution guarantees a criminal defendant the effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, ___ U.S. ___, 137 S. Ct. 759, 775 (2017); *United States v. Morris*, 917 F.3d 818, 823 (4th Cir. 2019).  Ineffective assistance of counsel is a well recognized basis for post-conviction relief.  *See generally Missouri v. Frye*, 566 U.S. 133 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010).

To mount a successful challenge based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687-88.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000); *United States v. Winbush*, 922 F.3d 227, 229 (4th Cir. 2019); *United States v. Carthorne*, 878 F.3d 458, 465 (4th Cir. 2017); *United States v. Powell*, 850 F.3d 145, 149 (4th Cir. 2017).  First, the petitioner must show that counsel's performance was deficient.  Second, the petitioner must show that he was prejudiced by the deficient performance.  *Strickland*, 466 U.S. at 687; *see Buck*, 137 S. Ct. at 775; *Chaidez v. United States*, 568 U.S. 342, 348 (2013); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Hill v.*

---

[6] As noted by this Court in *Fletcher v. Wolfe*, No. CV TDC-15-0051, 2018 WL 1211535, at *4 (D. Md. Mar. 8, 2018)*,* in cases where pleas have been invalidated based on a lack of explanation of the elements of the offense, the offense at issue had never been the subject of an arraignment.  But, Brown was formally charged with use of a firearm during the commission of a crime of violence.  ECF 9-1 at 4.

*Lockhart*, 474 U.S. 52, 57 (1985); *Winbush*, 922 F.3d at 229; *Powell*, 850 F.3d at 149; *United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *United States v. Dyess*, 730 F.3d 354, 361 (4th Cir. 2013); *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012); *United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011); *see, e.g., United States v. Baker*, 719 F.3d 313, 318 (4th Cir. 2013).

The first prong is known as the "performance prong," which relates to professional competence. The petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness," as measured by "prevailing professional norms." *Strickland*, 466 U.S. at 688; *see Richter*, 562 U.S. at 104; *Powell*, 850 F.3d at 149. The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690).

The Supreme Court has made clear that the "first prong sets a high bar." *Buck*, 137 S. Ct. at 775; *see also Powell*, 850 F.3d at 149. In *Padilla*, 559 U.S. at 371, the Court said: "Surmounting *Strickland's* high bar is never an easy task." Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Buck*, 137 S.Ct. at 775 (citation omitted). Consequently, the performance prong is "'difficult'" to establish. *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *James v. Harrison*, 389 F.3d 450, 457 (4th Cir. 2004)).

To satisfy the high bar, the burden is on the petitioner to establish "'that counsel made errors so serious that his "counsel" was not functioning as the "counsel" guaranteed by the Sixth Amendment.'" *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 687). Notably, "the *Strickland* standard must be applied with scrupulous care," *Richter*, 562 U.S. at 105, and "the standard of judging counsel's representation is a most deferential one." *Id.* Indeed, "[k]eenly

aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"   *Lawrence*, 517 F.3d at 708 (quoting *Strickland,* 446 U.S. at 689); *see Cullen v. Pinholster*, 563 U.S. 170, 189 (2011); *Richter*, 562 U.S. at 104; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015).

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense."  *Strickland*, 466 U.S. at 687.  To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694; *see also Buck*, 137 S. Ct. at 776; *Lafler*, 566 U.S. at 163; *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings.  *Strickland*, 466 U.S. at 687.  However, a petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt."  *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

In the context of plea proceedings, the performance standard remains the same, but the prejudice prong of the test is modified.  After a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart,* 474 U.S. 52, 59 (1985).  The Supreme Court has emphasized that this inquiry should be conducted "objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.'"  *Id.* at 60 (quoting *Strickland*, 466 U.S. at 695). Thus, a defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances."  *Padilla,* 559 U.S. at 372.

A court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

Brown contends that his trial counsel was ineffective because she failed to advise him of the codefendants' recorded jail calls prior to the plea hearing. The assertion is at odds with the record. Brown also asserts that he would not have pled guilty if he had known about the calls.

After the State's summary of the facts at the guilty plea proceeding on April 28, 2016, Brown's trial counsel stated, in part, ECF 9-2 at 24-25:

> I just want for Mr. Brown's benefit and for the Court's to indicate from our perspective, the relative culpability between these co-defendant's [sic] is not perhaps as wide as Todd and Tahzay Brown would want the Court to believe. That during the course of our preparation of trial, we—and it would have been used as impeachment at trial, we subpoenaed all the calls from Tahzay Brown at Anne Arundel County Detention Center. The level of shell games and the moving—agreements to move parts and three way calls to Todd and Tangela Brown showed us first of all, that Todd Brown is—did not have anything to do with this.
>
> That he was a user of Percocet and that he was far more involved in the initial drug transaction and that Tahzay Brown worked mightily to minimize his role in all of that—in all of this. By the time that he is getting his girlfriend to call Todd Brown so that they can kind of thwart the jail calls and talking about how they are going to work together to beat this murder charge, is revealing.
>
> I want the Court to know that to the extent that the Court still needs to – I think that it is just important as an addition to the factual predicate that is read into the record.

Defense counsel also mentioned the jail calls at the sentencing on June 6, 2016. She said, ECF 9-3 (Tr. of 6/6/16), at 16:

As you heard me say at the time of the plea, I spent hours listening to these jail calls between Tahzay Brown and his family members and Todd Brown when he was incarcerated and his family members, I – and certainly that would have been an issue had this case gone to trial.  I take it—we take exceptions to the notion that this evolved just out of the blue and everyone else otherwise had pretty clean hands.

Trial counsel was asked about the jail calls at the post conviction hearing.  She testified that she discussed the calls with Brown and any relevant content was relayed to him.  ECF 9-4 at 44-46.  In her view, the content of the calls would not provide Brown with any factual or legal defense but could have been used as impeachment evidence.  *Id.* at 45.

When denying Brown's post conviction application, the circuit court addressed the claim as follows, ECF 9-1 at 68:

> Petitioner argues he was prejudiced because trial counsel failed to timely disclose co-defendant's recorded jail calls.  Specifically, Petitioner contends that since he was unaware of the calls or their impeachment value, he was not properly advised of all possible trial strategies prior to entering the guilty plea.  Petitioner indicates he would have elected a trial had he been aware of the content and potential use of the calls, rather than plead guilty.

> At the post-conviction hearing on cross examination, the State asked Petitioner why he did not probe for more information after trial counsel referenced the jail calls at the plea hearing.  Petitioner testified that he was instructed to answer every question with solely "yes" or "no" and was unaware he could speak to trial counsel during the colloquy.

> Trial counsel testified that she listened to the calls and subsequently discussed the general content of them with Petitioner prior to the plea hearing.  Due to the voluminous capacity of the calls, trial counsel stated she strategically listened to those calls surrounding relevant events (such as after the co-defendant's meeting with an attorney or after the co-defendant's presence in court).  Trial counsel indicated she conveyed anything she heard of relevance to Petitioner.  Further, trial counsel corresponded with the jail requesting that Petitioner be given access to recordings of the calls at the jail, however her efforts were unsuccessful.

> This Court finds that trial counsel made reasonable efforts to determine the value of the calls and actively communicated with Petitioner regarding their content.  Accordingly, trial counsel's representation does not meet the standard of ineffective assistance as to the "error" prong.  Additionally, even had the Court found error, the Petitioner did not meet his burden to show that there was any resulting prejudice.

The circuit court dismissed Brown's ineffective assistance of counsel claim on the deficiency prong by making the factual determination that trial counsel did, in fact, obtain the content of the jail calls and disclose the content to Brown before the plea hearing.  Brown has not presented any evidence to dispute the circuit court's factual determination.  Therefore, this Court is bound by the circuit court's determination of the facts.  28 U.S.C. § 2254(e)(1).  Accordingly, the performance of Brown's trial counsel was not deficient, and his ineffective assistance of counsel claim fails.

Alternatively, the circuit court concluded that Brown could not demonstrate prejudice. Based on the comments made by trial counsel at the plea and sentencing hearings and trial counsel's testimony at the post conviction hearing, the jails calls would not have exculpated Brown.  Rather, the jail calls might have had impeachment value during the testimony of the co-defendants at trial.

Trial counsel testified during the post conviction hearing that if the State proceeded to trial, and if Brown were convicted, Brown would have faced a potential sentence of life without the possibility of parole.  ECF 9-4 at 55.  As noted above in the factual basis for the plea, the State intended to obtain testimony from Brown's codefendants that Brown shot and killed Ray.  Based on the description of the calls provided by trial counsel, the utility of the jail calls would have been dependent upon how Tahzay Brown and Todd Brown presented their relative culpability at trial, showing that Tahzay Brown and Todd Brown were possibly "more guilty" than their testimony indicated.  Regardless, the calls would not provide any factual or legal defense for Brown.

Put another way, it would not have been an objectively rational decision for Brown to reject the plea agreement of thirty years' imprisonment for a second degree murder because of possible non-exculpatory impeachment evidence, when he was facing a strong likelihood of conviction and

a potential sentence of life imprisonment.  Accordingly, it was not an unreasonable application of federal law for the circuit court to dismiss Brown's ineffective assistance of counsel claim based on the prejudice prong.

### D.      Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Because the accompanying Order is a final order adverse to the applicant, 28 U.S.C. § 2253(c)(1) requires issuance of a certificate of appealability before an appeal can proceed.

A certificate of appealability may issue if the prisoner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects constitutional claims on the merits, a petitioner may satisfy the standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  When a petition is denied on procedural grounds, the petitioner may meet the standard by showing that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling."  *Id.*

Brown has failed to satisfy this standard on any of his claims.  Therefore, a certificate of appealability shall not issue.

### E.      Conclusion

For the foregoing reasons, the Court will deny Brown's Petition.  I also decline to issue a certificate of appealability.

A separate Order follows.

May 9, 2022                                            /s/
Date                                          Ellen L. Hollander
                                              United States District Judge